UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- X
THE POKÉMON COMPANY INTERNATIONAL, INC.,            :

      Plaintiff,            :            CIVIL ACTION NO.

  -against-            :            **COMPLAINT**

FAB STARPOINT LLC            :            **JURY TRIAL REQUESTED**

      Defendant.            :
------------------------------------- X

The Pokémon Company International, Inc. ("Plaintiff" or "TPCi"), by and through its attorneys, for its Complaint against Defendant FAB Starpoint LLC ("Defendant" or "FAB"), respectfully alleges as follows:

## THE PARTIES

1. TPCi is a Delaware corporation with its principal place of business at 10400 NE 4th Street, Suite 2800, Bellevue, WA 98004.

2. On information and belief, FAB is a New York limited liability company with a place of business at 15 West 34th Street New York, NY 10001.

## JURISDICTION AND VENUE

3. This Court has diversity jurisdiction under 28 U.S.C. § 1332. TPCi is a Delaware corporation with its principal place of business in Washington. On information and belief FAB is a New York limited liability company with its principal place of business in New York. The parties are completely diverse. 28 U.S.C.§ 1332(a)(2). And, the amount in controversy exceeds $75,000.

4. On information and belief, FAB is a New York limited liability company formed in New York and maintains a place of business in this District. Personal jurisdiction over FAB and venue are proper in this Court.

5. Additionally, FAB consented to personal jurisdiction in New York and to this venue. The contract at issue contains a forum selection clause providing that any judicial proceeding arising from the contract or any related matter may be brought in the United States District Court for the Southern District of New York.

## FACTUAL ALLEGATIONS

### A. TPCi and Its Licensees

6. TPCi is an internationally renowned media franchise centered on fictional Pokémon characters featured in video games, trading cards, animated television shows, movies, comic books, toys, apparel, accessories, and the Pokémon GO game (collectively the "Pokémon Universe").

7. TPCi's Pokémon characters appear in a wide variety of merchandise that TPCi creates and sells, both directly and through a worldwide network of licensees.

8. To meet the high demand for Pokémon-themed goods, TPCi enters into agreements with, among others, toy, clothing, and goods manufacturers. TPCi's licensees serve an important role in promoting the Pokémon brand, and licensing is an important source of revenue for TPCi.

9. TPCi carefully regulates and reviews the performance of its licensees. To this end, TPCi's license agreements require regular performance reports from its licensees and grant TPCi the right to audit its licensees.

B.  **The Merchandise Licensing Agreements**

10.  In or around February 4, 2013, TPCi and FAB executed the Merchandise License Agreement (the "Merchandise License Agreement"). Subsequently, in or around December 2016, the parties executed the Merchandise License Agreement Renewal (collectively with the Merchandise License Agreement, the "Agreement"), extending the Merchandise License Agreement through December 31, 2018. Through the Agreement, TPCi granted FAB a non-exclusive, non-transferable right to use, among other things, TPCi's copyright protected artwork and/or character likenesses in connection with the manufacture, distribution, promotion, advertisement and sale of apparel. This license was limited to the specific goods outlined in the Agreement (the "Licensed Products"). Additionally, the Agreement limited the acceptable sales channels and authorized distributors to be used by FAB in the sale of the Licensed Products.

11.  In exchange for this non-exclusive license, FAB agreed to pay TPCi a specified royalty and an anti-piracy fee. The Agreement required FAB to provide TPCi a complete and accurate accounting of sales of Licensed Products and royalties/fees owed within 30 days of the end of every calendar quarter as well remit payment at that time for the royalties due.

12.  The Agreement also obligated FAB to maintain accurate books and records regarding the sale of Licensed Products; the royalties payable; the transactions underlying the statements to be furnished pursuant to the Agreement; and compliance with the Agreement.

13.  Upon receiving reasonable notice from TPCi, FAB was obligated to allow TPCi to conduct an audit of FAB's records within a reasonable time to determine if any additional amounts were owed to TPCi.

14.  The Agreement further provides that any late payments from FAB to TPCi bear an interest rate of 12% per annum or the maximum rate allowed by law.

143764823.2

15. In the event of termination of the Agreement, FAB is obligated to pay TPCi's costs and expenses, including attorneys' fees, in collecting any amounts due under the Agreement.

**C.  Audit of FAB**

16. In or around 2016, TPCi retained an accounting firm to conduct an audit of the royalty statements provided by FAB (the "Audit") between July 1, 2013 and September 30, 2015 (the "Audit Period").

17. The Audit revealed several deficiencies. For example, FAB made significant sales through unauthorized channels and to unauthorized distributors in breach of the Agreement. In total, the audit revealed FAB owed TPCi an additional $237,661 (the "Audit Claim").

18. On or around October 17, 2018, TPCi sent FAB a letter outlining an offer to settle the Audit Claim. FAB did not respond.

**D.  FAB's Failure to Pay 2018 Royalties**

19. Under the Agreement, FAB was required to provide TPCi with periodic statements within 30 days of the end of each calendar quarter. Additionally, FAB was required to make royalty payments to TPCi within 30 days after the end of each calendar quarter and at the same time FAB sent its periodic statement for each quarter.

20. FAB failed to make any royalty payments to TPCi for Quarters 2-4 of 2018.

21. FAB submitted a periodic statement to TPCi for Quarter 2. According to that statement, FAB owed $300,203.05 for Quarter 2. Payment was due no later than July 30, 2018.

22. FAB submitted a periodic statement for Quarter 3. According to that statement, FAB owed $140,527.09 for Quarter 3. Payment for Quarter 3 was due no later than October 30, 2018.

23. FAB has not made any payment to TPCi for Quarters 2 or 3.

24. FAB's periodic statement and payment for Quarter 4 was due no later than January 30, 2019.  FAB did not send the periodic statement or make any payment for Quarter 4.

25. On or around February 22, 2019, TPCi sent FAB a letter outlining FAB's breaches of the Agreement and demanding payment of the overdue amounts.  FAB did not respond.

26. On or around March 11, 2019, TPCi sent FAB another letter terminating the 90-day Sell-Off Period under the Agreement, effectively terminating any remaining rights FAB had under the Agreement.  Though FAB is obligated to make royalty payments to TPCi for any sales of Licensed Products made during the Sell-Off Period, FAB has not made any payments to TPCi for such sales.

## COUNT I
## (BREACH OF CONTRACT)

27. TPCi realleges and incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

28. The Agreement is a valid and enforceable contract between FAB and TPCi.

29. FAB willingly entered the Agreement on February 4, 2013 and renewed the Agreement on December 27, 2016.

30. FAB is bound by the terms of the Agreement.

31. FAB has materially breached the Agreement by engaging in the conduct described above and in at least the following ways:

   a. FAB marketed, distributed, and/or sold Licensed Products using unauthorized sales channels and channels of distribution;

   b. FAB failed to make payment of amounts due as a result of the Audit;

  c. FAB failed to remit royalty payments for 2018 Quarters 2-4;

  d. FAB failed to provide a periodic statement for Quarter 4 of 2018;

  e. FAB failed to provide a final statement of product sales and royalties/fees owed to TPCi; and

  f. FAB failed to remit payment for sales made during the Sell-Off Period.

32. TPCi has dutifully performed its obligations pursuant to the Agreement.

33. Because of FAB's breaches of the Agreement, TPCi has been unable to determine the exact amounts owed to TPCi, which total over $650,000 plus interest.

34. Under the Agreement, FAB is liable for all of TPCi's costs and expenses, including reasonable attorneys' fees, expended by TPCi in collecting amounts owed under the Agreement.

35. As a direct and proximate result of FAB's material breaches of the Agreement, TPCi has been and will continue to be harmed, thereby entitling it to damages, restitution, attorneys' fees, costs, and/or other relief against FAB.

## COUNT II
## (ACCOUNTING)

36. TPCi realleges and incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

37. FAB is obligated to pay TPCi certain amounts under the Agreement based on the quantity of Licensed Products sold by FAB.

38. The amount of money due from FAB to TPCi under the contract cannot be ascertained without a detailed accounting by FAB of the precise number of units of Licensed Products sold by FAB.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), TPCi demands a trial by jury as to all issues so triable in this action.

## PRAYER FOR RELIEF

WHEREFORE, TPCi respectfully requests judgment be entered in its favor and against FAB, as follows:

1. An order declaring that FAB hold in trust, as constructive trustee for the benefit of TPCi, the monies obtained from the distribution of Licensed Products, and requiring FAB to provide TPCi with a full and complete accounting of FAB's sale of Licensed Products, all amounts paid to TPCi as a result of those sales, and all amounts due and owing to TPCi as a result of FAB's sale of Licensed Products;

2. An award to TPCi of restitution and damages, including, but not limited to, liquidated, compensatory, and punitive damages, and all other damages permitted by law;

3. An award to TPCi of its costs of suit, including, but not limited to, reasonable attorneys' fees, as permitted by the Agreement and law; and

4. Such other relief as the Court deems just and proper.

143764823.2

DATED:  April 5, 2019

Respectfully submitted,

By: */s/ Dennis Hopkins*
Dennis Hopkins (DH3767)
**Perkins Coie LLP**
30 Rockefeller Plaza
New York, NY 10112
Telephone: 212.262.6900
Email:  DHopkins@perkinscoie.com

Holly M. Simpkins (*pro hac vice* application forthcoming)
**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Telephone:  206.359.8000
Facsimile:  206.359.9000
Email:  HSimpkins@perkinscoie.com

Attorneys for Plaintiff
THE POKÉMON COMPANY INTERNATIONAL, INC.